UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| TRENTON JORDAN | ) | Case No. 3:04 CV 7259 |
| | ) | |
| Petitioner, | ) | Judge Lesley Brooks Wells |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | OF MAGISTRATE JUDGE |
| MARGARET BRADSHAW | ) | (Regarding Docket No. 15) |
| | ) | |
| Respondent. | ) | Magistrate Judge James S. Gallas |
| | ) | |

Petitioner Trenton Jordan is in prison in the custody of the state of Ohio since 1994 following his convictions for aggravated murder, aggravated robbery and robbery. The victim of the aggravated murder was an uncle who had allegedly sexually abused Jordan form the age of 8 to the time he turned 16 ( Madison Correctional Institution Psychological Services Notes, Sept. 3, 1996, Docket No. 42). The history of Jordan's state court proceedings was capsulized in his last attempt to obtain release in a state post-conviction relief petition filed in 2002:

> On August 23, 1994, following appellant's pleas of guilty, a three-judge panel found him guilty of one count of aggravated murder with a death penalty specification; one count of aggravated robbery; and four counts of robbery. He was sentenced to life in prison with parole eligibility after 30 years on the aggravated murder conviction, and 10 to 25 years on the aggravated robbery conviction, with the sentences to be served concurrently. The trial court further imposed consecutive sentences of six to fifteen years on each of the four robbery convictions, with those sentences to be served consecutively to the aggravated murder and aggravated robbery sentences. In September 1997, appellant moved for a delayed appeal but this court denied his request. On March 8, 2002, appellant filed in the trial court a motion for leave to file a delayed petition for postconviction relief. In his petition, appellant claimed ineffective

3:04cv7259 2

>assistance of trial counsel based on a failure to raise the issue of his competence to stand trial. Appellant also asserted that trial counsel was ineffective for failing to investigate and alleged that he was insane at the time he committed the offenses. The state responded with a motion for summary judgment/motion to dismiss. The trial court declined to hold an evidentiary hearing, and on September 12, 2002, found appellant's motion for leave to file a delayed petition not well-taken. The trial court found that appellant's first claim was without merit because appellant had been referred to the Court Diagnostic and Treatment Center for an evaluation as to his present competency and to a private psychologist for evaluation after counsel raised the issue of appellant's competency to stand trial. The trial court further noted that a hearing held on August 1, 1994, appellant was found competent to stand trial. As to appellant's second claim based on counsel's failure to investigate and to allege that appellant was insane at the time he committed the offenses, the trial court adopted as its own findings the state's memorandum in which it was argued that the petition was untimely filed pursuant to the provisions of R.C. 2953.21(A) and R.C. 2953.23(A). This appeal followed.

*State v. Jordan*, 2003 WL 23167339 *1 (Ohio App. 6 Dist.).

The state post-conviction petition was denied as untimely, *Id.* *2, and no appeal from this denial was taken to the Ohio Supreme Court. Instead, on May 12, 2004 Jordan filed his federal petition under 28 U.S.C. §2254 seeking relief from the convictions on the sole ground of ineffective assistance of trial counsel for failing to pursue a defense of insanity. Jordan claims that he suffered multiple personality disorder [MPD], and that he has a history of mental illness dating back to early childhood.[1]

---

[1] Under Ohio law, in order to prove the insanity defense due to MPD, Jordan would need to demonstrate that the personality in control did not know the wrongfulness of his actions at the time the offenses were committed, or that the personality was incapable of knowing the wrongfulness of the actions as a result of mental disease or defect. *State v. Grimsley*, 3 Ohio App. 3d, 265, 268-69, 444 N.E.2d 1071 (1982); *State v. Sublet*, 1995 WL 72355 (Ohio App. 9th Dist.). It is immaterial which personality is in control, as long as defendant is conscious and

3:04cv7259                                                      3

Respondent has moved to dismiss the petition as untimely under 28 U.S.C. §2244(d).[2] However since Jordan's conviction preceded April 24, 1996, the effective date of the amendment of §2244(d), Jordan had a one-year grace period from that date giving him until April 24, 1997, to file a petition for federal habeas corpus relief. See *Carey v. Saffold*, 536 U.S. 213, 217, 172 S.Ct. 2134, 156 L.Ed.2d 604 (2002); *Isham v. Randle*, 226 F.3d 691, 693 (6th Cir. 2000), *cert. denied*, 531 U.S. 1201 (2001). This petition filed in 2004 is untimely according to Respondent's calculation. Respondent bears the burden of demonstrating that the statute has run. *Griffin v. Rogers*, 308 F.3d 647, 653 (6th Cir. 2002); *DiCenzi v. Rose*, -F.-, 2005 WL 1971112(6th Cir. 2005).

---

the actions were a product of defendant's volition. *Grimsley*, at 268.

[2]  28 U.S.C. §2244(d) reads as follows:

> (d)(1) A 1-year period of limitation shall apply to an application for writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of -
>
>> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>>
>> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>>
>> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>>
>> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (d)(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

3:04cv7259 4

Respondent has met her burden. Respondent's calculation time begins with Jordan's sentencing on August 29, 1994 plus 30 days that Jordan had to timely appeal ( but declined to do so ). However, giving Jordan the benefit of the grace period, he was required to initiate federal habeas review on or before April 24, 1997. Once the 1-year period has fully run and expired, it cannot be revived or retriggered by subsequent state post-conviction or other collateral proceedings. See *Vroman v. Brigano*, 346 F.3d 598, 602 (6th Cir. 2003); and see *Searcy v. Carter*, 246 F.3d 515, 519 (6th Cir. 2001), *cert. denied*, 534 U.S. 905 (2001)(tardy Ohio App. R. 26(B) application does not restart period of limitation); *Allen v. Yukins*, 366 F.3d 396, 401 (6th Cir. 2004), *cert. denied*, 125 S.Ct. 200 (2004).

*Equitable Tolling and 28 U.S.C. §2244:*

Jordan raises the issue of equitable tolling due to mental incompetence to prosecute his legal rights from 1996 through March 2002. "The petitioner bears the burden of demonstrating that he is entitled to equitable tolling." *Allen*, 366 F.3d at 401, quoting *McClendon v. Sherman*, 329 F.3d 490, 494 (6th Cir.2003); *Keenan v. Bagley*, 400 F.3d 417, 420 (6th Cir. 2005)  The 1-year statute of limitations of §2244(d)(1) is not jurisdictional. See *Allen*, 366 F.3d at 401; *Dunlap v. United States*, 250 F.3d 1001, 1007 (6th Cir. 2001), *cert. denied*, 534 U.S. 1057 (2001).

In applying equitable tolling the Court must consider the *Andrews* factors:  petitioner's lack of notice of the filing requirement; petitioner's lack of constructive knowledge of the filing requirement; diligence in pursuing one's rights; absence of prejudice to the Respondent and the petitioner's

3:04cv7259 5

reasonableness in remaining ignorant of the legal requirements for filing his claim. *Dunlap*, 250 F.3d at 1008.[3] However, "this list of factors is not necessarily comprehensive, and not all factors are relevant in all cases." *Vroman v. Brigano*, 346 F.3d at 605; *Allen*, 366 F.3d at 401. "[T]he doctrine of equitable tolling allows federal court to toll a statute of limitations when, 'a litigant's failure to meet a legally-motivated deadline unavoidably arose from circumstances beyond that litigant's control.'" *Keenan*, 400 F.3d at 421, quoting *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 560-61 (6th Cir. 2000).

*Lack of actual or constructive knowledge and ignorance*

The Sixth Circuit has stressed under this factor that "ignorance of the law alone is not sufficient to warrant equitable tolling." *Allen*, 366 F.3d at 403; *Griffin v. Rogers*, 399 F.3d 626, 637 (6th Cir. 2005), quoting *Rose v. Dole*, 945 F.2d 1331, 1335 (6th Cir. 1991). Given the clear provisions of 28 U.S.C. §2244(d) lack of actual or constructive knowledge of the "1-year period" does not make equitable tolling appropriate. See *Allen*, 366 F.3d at 403; compare, *Griffin*, 399 F.3d at 637 (delay excused when petition filed in 1997 at time when law was unsettled).

*Diligence and Reasonableness in Remaining Ignorant*

Jordan's allegation of incompetence at the time he entered his pleas provides no basis for equitable tolling. The record and Jordans's exhibits show that this avenue was investigated by trial

---

[3] *Andrews v. Orr*, 851 F.2d 146 (6th Cir. 1988).

3:04cv7259                                                                                          6

counsel, Jordan was found competent, and that Jordan acceded to this finding in entering into a counseled plea bargain when he entered his guilty pleas on August 24, 1994. See *Fisher v. Gibson*, 262 F.3d 1135, 1142-43 ((10th Cir. 2001); *Price v. Jamrog*, 79 Fed. Appx. 110 ( 6th Cir. Oct 23. 2003).

Jordan, though in responding to respondent's argument explains that he was not capable of prosecuting his legal rights from April 24, 1996 through March 2002 because he suffered from post-traumatic stress disorder diagnosed on November 14, 1996 and MPD, plus his medication associated with treatment, i.e. fluxetine and doxepin, also enters into his incapacity. Jordan submits several exhibits, the first of which is from Dr. Covey. This report was prepared sometime during or after 2003, and relates that Jordan claims to be suffering from MPD, but concludes, following examination, "based on the evidence found in the Mental Health file, there is a strong possibility that Inmate Jordan is malingering." (First report pg.1 signed by Dr. Covey, Docket No. 42). This psychologist further explains:

> ...Inmate Jordan indicated that he has the ability to have his personalities talk to each other and he is aware of the conversations. This further indicates malingering as Dissociative Identity Disorder (the DSM-IV term for Multiple Personality Disorder) is a state in which the individual is not aware of the transition.... He may have a significant history of physical and sexual abuse. If so, these should be treated with acknowledging or supporting his "Multiple Personality Disorder Claim." (*Id.* at 2)[4]

---

[4] DSM-IV is the American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders*, Fourth ed., Text Revision (2000).

3:04cv7259                                        7

The second exhibit is defense counsel's June 9, 1994 letter to a doctor relating that a court-appointed psychologist had interviewed Jordan and opined from this interview that Jordan "may in fact" have MPD. (Second report, letter written June 9, 1994, Docket No. 42).

The third and fifth reports consist of medical notes from 1994 through 2001 from prison mental health treatment. They do serve to show a continuum over which Jordan actively sought mental treatment. However, they contain no findings, impressions or diagnoses indicating mental incapacity. Instead, they indicate Jordan's adjustment to the prison setting and coping with stress due to the legacy of abuse from his uncle, and several suicide attempts when he was younger. Of significance was the report of September 3, 1996, that Haldol was prescribed for alleged auditory hallucinations, but it was soon discontinued. Recurrent depression was noted and referral was made in September 1996 to Dr. Tetirick., which lead to the final exhibit. In the meantime Jordan was a "no show" for scheduled sessions on October 2, 8 and 15, 1996.

Dr. Tetirick did examine Jordan in November 1996, and he assigned a global assessment of functioning score of 80, which indicates, "[i]f symptoms are present, they are transient and expectable reaction to psycho-social stressors....." See *DSM-IV* pg.34. This psychiatrist found that only elements of possible post-traumatic stress disorder may be present. (Sixth report, signed by Dr. Tetirick, Nov.19, 1996, Docket No. 42). In other words Jordan was a highly functioning individual at that time.

3:04cv7259                                                                          8


In contrast, the most recently updated report is from Dr. Manton. (Fourth report, signed by Dr. Manton sometime after Feb. 2004, Docket No. 42). Using the February 2004 revision of the mental health evaluation form, this psychiatrist found significant, but not incapacitating mental restriction. Dr. Manton more favorably found that Jordan was suffering possible post-traumatic stress disorder since 1996 which was medicated with doxepin at bedtime. With respect to MPD, it was noted that Dr. Masser had earlier dismissed this as manipulative, and Jordan had not sought mental health treatment from 2001 through 2003. However, Dr. Manton was more sympathetic and found that Jordan did suffer an unspecified personality disorder, and assigned a global assessment of functioning score of 68, indicating, "[s]ome mild symptoms (e.g. depressed mood and mild insomnia)..., but generally functioning pretty well." See *DSM-IV* pg 34. However, the doctor soundly rejected MPD, and attributed Jordan's persistence as an indication of a lack of insight into his problems.

The medical evidence, contrary to Jordan's claims, demonstrates that Jordan was mentally competent and highly functional through at least 2001, if not 2003, but more recently his mental state of health has suffered deterioration, but not to an extent that would indicate inability to prosecute his claims. This is further borne out by the fact that it was not until 2002 that Jordan decided to raise his arguments in the state courts, and subsequently file his federal habeas corpus petition. Thus, even Jordan's more recent mental health deterioration does not excuse Jordan's lack of diligence or failure to take earlier action to prosecute his claim.

3:04cv7259                                                                                      9

*Lack of prejudice*

"Absence of prejudice is a factor to be considered only after a factor that might justify tolling is identified." *Vroman*, 346 F.3d at 605; *Allen*, 366 F.3d at 404. Given that Jordan has not established any factor that might justify tolling, lack of prejudice is not a consideration.

*Actual innocence*

The question of whether an actual innocence exception existed was an issue left unresolved in *Allen,* 366 F.3d at 405-06. However, the Sixth Circuit issued a recent decision in *Souter v. Jones*, 395 F.3d 577 (6th Cir. 2005), determining as an issue of first impression that a credible claim of actual innocence will equitably toll the §2244(d) limitations period. *Id.*, at 508-596. None of Jordan's arguments demonstrate actual innocence. Actual innocence means "factual innocence not mere legal insufficiency." *Bousley v. U.S.*, 523 U.S. 614, 623-24, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998). Jordan has not produced new evidence of innocence that was not presented at trial. See *Schlup v. Delo*, 513 U.S. 298, 324, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995).

*Lack of Exhaustion*

There is an obvious failure to exhaust state remedies, but a stay to permit Jordan to return to the state courts and exhaust his state remedies will not save this petition from its unquestionable untimeliness at the time of filing. Compare, *Pace v. DiGuglielmo*, -U.S.-, 125 S.Ct. 1807, 161 L.Ed.2d 667 (2005); *Rhines v. Weber*, -U.S.-, 125 S.Ct. 128, 161 L.Ed.2d 440 (2005).

3:04cv7259                                                                             10

### *CONCLUSION AND RECOMMENDATION*

For the foregoing reasons, the Respondent's motion to dismiss should be granted and this petition filed under 28 U.S.C. §2254 should be dismissed due to untimeliness pursuant to 28 U.S.C. §2244(d).

                                                                    s/James S. Gallas
                                                              United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of mailing of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation.  See *U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).

Dated:  September 13, 2005